IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| CONSTANCE B. STAFFORD, | ) CIVIL ACTION 4:04-1793-TLW-TER |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) REPORT AND RECOMMENDATION |
| JO ANNE B. BARNHART | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

**I. PROCEDURAL HISTORY**

The plaintiff, Constance B. Stafford, filed applications for disability insurance benefits (DIB) on July 11, 2002 (Tr. 69) and Supplemental Security Income (SSI) on July 11, 2002 (Tr. 178), alleging inability to work since April 15, 2000 (Tr. 69, 178), due to four hernia repairs and problems with her legs (Tr. 73). Her applications were denied at all administrative levels (Tr. 37-47), and

upon reconsideration (Tr. 48). The Administrative Law Judge (ALJ) issued an unfavorable decision on February 26, 2004, finding plaintiff was not disabled because she had the residual functional capacity (RFC) to perform light work that existed in significant numbers in the national economy (Tr. 15-21).[1] On April 28, 2004, the Appeals Council denied plaintiff's request for review (Tr. 6-9), thereby making the ALJ's decision the Commissioner's final decision for purposes of judicial review under section 205(g) of the Act.

## II.  FACTUAL BACKGROUND

The plaintiff, Constance B. Stafford, was born June 21, 1963, (Tr. 69), and was 40 years old at the time of the ALJ's decision. She graduated from high school and completed two years of technical college (Tr. 79, 167). She worked in the vocationally relevant past as a hotel housekeeper, nursery planter and shipper, security guard, and paper mill process specialist (Tr. 74).

## III.  DISABILITY ANALYSIS

The plaintiff's arguments consist of the following:

(1) The ALJ erred in finding that the petitioner had the residual functional capacity to do light work and improperly relied on the erroneous finding when applying the medical-vocational guidelines.

(2) The ALJ erred by relying solely on the medical-vocational guidelines to determine that the petitioner was disabled and

---

[1] "Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying articles weighing up to 10 pounds. Light jobs require a good deal of walking and standing to carry out job duties, or sitting while pushing or pulling arm or leg controls. 20 CFR § 404.1567(b).

>   by failing to retain a vocational expert to assist in deciding the petitioner's ability to do other work.

(Plaintiff's brief).

In the decision of February 26, 2004, the ALJ found the following:

1. The claimant meets the non-disability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the date of her alleged onset of disability.

3. The claimant's recurrent umbilical hernia status post repair, history of leg pain and back pain, and dyspnea secondary to upper airway obstruction are considered "severe" based on the requirements in the Regulations 20 CFE §§ 404.1520(c) and 416.920(b).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6. The claimant has the functional capacity for light work.

7. The claimant is not able to perform her past relevant work (20 CFR §§ 404.1565 and 416.965).

8. The claimant is a "younger individual between the ages of 18 and 44" (20 CFR §§ 404.1563 and 416.963).

9. The claimant has "more than a high school (or high school equivalent) education" (20 CFR §§ 404.1564 and 416.964).

10. The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 CFR §§ 404.1568 and 416.968).

11. The claimant has the residual functional capacity to perform the full range of light work (20 CFR §§ 404.1567 and 416.967).

12. Based on an exertional capacity for light work, and the claimant's age, education, and work experience, a finding of "not disabled" is directed by Medical-Vocational Rule 202.20.

13. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR§§ 404.1520(f) and 416.920(f)).

(Tr. 20-21).

## IV. MEDICAL REPORTS

The undersigned has reviewed the medical records and finds many of the reports relevant to the issues in this case. The medical records as set out by the defendant have not been disputed by the plaintiff and plaintiff did not set out a summary of the medical records in her memorandum. Therefore, the undisputed and relevant medical evidence as stated by the defendant is set forth herein.

The record shows James Fulcher, M.D., was plaintiff's family physician from June 1983 until January 11, 2002. Dr. Fulcher saw plaintiff for a variety of ailments including coughs, colds, a rash, neck pain, hip pain, toe pain, stomach pain, status post recurrent hernia repairs, and a sore throat.

On October 16, 1996, plaintiff presented at the office of C. Thomas Fitts, M.D. for examination of a hernia that had developed at the incision where she had a cesarean section three or four months earlier. Dr. Fitts remarked that, other than the hernia, plaintiff was "basically healthy." (Tr. 142). On October 28, 1996, plaintiff underwent surgery to repair the hernia (Tr. 147). On May 19, 1997, Dr. Fitts examined plaintiff and found her ventral hernia had recurred. The doctor noted

that plaintiff's work consisted of "extremely hard manual labor" and opined that work caused too much tension on her tissues for the previous surgery to successfully heal (Tr. 140).

On May 23, 1997, plaintiff underwent surgery to repair the hernia, this time with the use of synthetic mesh and sutures (Tr. 145). On December 13, 1999, plaintiff presented to Dr. Fitts with a new hernia, located just above the very top end of the earlier hernia. The doctor again observed that plaintiff's job required "constant manual labor" (Tr. 139). On December 27, 1999, plaintiff underwent surgery to repair the umbilical hernia, which had enlarged and into which part of her bowels had prolapsed. Dr. Fitts noted at that time that the earlier ventral hernia was still intact (Tr. 143).

Dr. Fitts saw plaintiff on January 4, 2000, for a followup visit and included the following remark in his treatment notes: "It is my belief that this young lady continues to work hard at the paper mill and every orifice in her abdominal wall that is weak tends to give out with time. She should not go back to this manual labor for 8 weeks after this hernia repair." (Tr. 138).

On February 22, 2000, Dr. Fitts cleared plaintiff to return to work, but warned her that so long as she continued engaging in "extremely heavy manual labor" there was a possibility that her hernia would come back (Tr. 138).

On April 20, 2000, plaintiff was admitted to Care Alliance Roper Hospital with a low grade fever and tenderness in the right lower abdominal quadrant. A CT scan showed two new, small ventral hernias in the midline. Dr. Fitts opined that these were contributing factors to plaintiff's symptoms. By the time she was discharged the following day, the pain had gone, plaintiff was eating normally, and all of her lab work had come back normal, except for chronic anemia (Tr. 120).

On May 15, 2000, plaintiff presented to Dr. Fitts, still with a low grade fever and "some abdominal discomfort." The doctor encouraged plaintiff to find another job that was not so "highly physical" and offered to repair her umbilical hernia with synthetic mesh (Tr. 138).

On June 30, 2000, Dr. Fitts performed surgery to repair plaintiff's two new ventral hernias using synthetic mesh. On July 10, 2000, plaintiff returned to Dr. Fitts to have staples removed from the surgery site. Dr. Fitts noted again plaintiff's "hard physical work" had caused her to have "multiple recurrent hernias." When he saw plaintiff in followup on July 31, 2000, Dr. Fitts noted she was "perfectly asymptomatic." He scheduled another follow up appointment for four weeks later, at which time he intended to discuss her return to her "quite strenuous" job, which he remarked had "probably played a significant role in the production of these hernias" (Tr. 134).

On August 31, 2000, Dr. Fitts noted plaintiff was well healed and remarked that he thought plaintiff should go back to work on light duty instead of heavy duty. On November 30, 2000, plaintiff returned to Dr. Fitts and asked him to complete a request for information from her employer's disability insurance carrier (Tr. 133).

On December 9, 2000, Dr. Fitts sent a letter of response to the disability insurance carrier stating:

> [S]pecific limitations and/or restrictions for Ms. Stafford are that she cannot work at heavy lifting because she has had such a job now for years and has had 4 ventral hernias with each repair coming apart, when she goes back to hard physical labor....I have told Ms. Stafford that if she goes back to hard labor, she will almost certainly recur again and sooner or later, this will not be repairable.....[T]his patient, if she engages in work that involves heavy manual labor will almost certainly rupture her ventral hernia. Other than hard physical labor, I do not believe she has any other restrictions on her functioning.

6

(Tr. 130-131).

On September 23, 2002, Randi Popp, M.D., conducted a consultative medical examination of plaintiff at the request of the State vocational rehabilitation agency. On physical examination, Dr. Popp observed that plaintiff was well nourished, well developed, and in no acute distress. Plaintiff's vision was 20/20 without correction, her right knee was slightly swollen and tender, but its range of motion was normal, and both of her lower extremities showed no edema, cyanosis, or lesions. X-rays of plaintiff's right knee were normal. Plaintiff's abdomen had a periumbilical scar from her hernia surgeries, but was soft and nontender with no mass or organomegaly. Dr. Popp concluded that plaintiff had an umbilical hernia and joint pain in her right lower leg (Tr. 154-157).

On February 25, 2003, Scott Korn, D.O., conducted a consultative examination of plaintiff at the request of the State agency. Dr. Korn noted at that time plaintiff's chief complaints were hernia, leg pain, and dyspnea. Plaintiff reported that she did not smoke, drink, use drugs, or drive. She stated she did do some cooking and cleaning and paid her own bills. On physical examination, Dr. Korn observed that plaintiff had a normal gait and used no assistive devices. He found she had a non tender abdomen with a midline scar consistent with repair of an umbilical hernia, but that no acute herniation, no tenderness, and no swelling were present. Plaintiff's legs had normal capillary refill and skin appearance, with no signs of deformities, crepitance, or edema. Plaintiff's knee flexion was 90 degrees on the left and 80 degrees on the right. Straight leg raising tests were negative, and plaintiff could heel, toe, and tandem walk. Plaintiff's spine had normal alignment, muscle tone, and range of motion. Dr. Korn opined that plaintiff's dyspnea was "clearly related to an ear, nose and throat problem with mucosal edema, etiology unknown." He reported that plaintiff's leg pain was "not easily noted" because there was "no pain able to be elicited." He

7

reported plaintiff's hernia was non acute and well repaired, adding that it appeared she would be able to do "mild-to-moderate lifting," but that heavy lifting would be discouraged (Tr. 166-169).

## V. ARGUMENTS

Plaintiff argues that the ALJ failed to consider all of the medical evidence and improperly discounted the petitioner's descriptions of the intensity and persistence of her pain. Plaintiff argues as follows:

> The ALJ relied heavily on the report of Dr. Fitts and found that the Petitioner's hernia was "non-acute and well repaired." (Tr. 19). The ALJ also thought it was significant that the Petitioner was not taking any prescribed medication and was not seeking any ongoing treatment. (Tr. 19). In making these findings, the ALJ ignored and/or failed to consider the report of Dr. J.E. Fulcher, the Petitioner's family physician, dated November 26, 2002, a copy of which is attached hereto, along with a letter from Petitioner's attorney, dated December 2, 2002. For some reason, a copy of this report could not be located in the Transcript provided to Petitioner's attorney although this report from Dr. Fulcher was filed prior to the hearing before the ALJ and is mentioned in Petitioner's Memorandum in Support of Petitioner's Appeal of the hearing Decision.
>
> . . . Based on the report, it would appear that the Petitioner's hernia was **not** "non-acute and well-repaired." It also would indicate that the Petitioner's hernia recurrence was not due to just "heavy" lifting since she had not worked since April 15, 2000.

(Plaintiff's brief).

Defendant asserts that plaintiff's argument must fail in that the purpose of asking a reviewing court to admit additional evidence to the record is so the evidence can be considered upon remand of the lower court's decision. Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome of a decision. Defendant argues that Dr. Fulcher's letter

does not meet these materiality prerequisites. (Defendant's brief). Defendant argues that although Dr. Fulcher's letter stated that she was being referred to her surgeon, Dr. Fitts, for a probable definitive hernia repair operation, plaintiff did not submit any evidence that Dr. Fitts recommended or performed a fifth hernia surgery. Further, defendant asserts that because Dr. Korn's determination in February 2003, that plaintiff could perform mild-to moderate lifting and had no evidence of acute herniation, swelling or tenderness, Dr. Fulcher's opinion was contradicted and it is unlikely that the ALJ's decision might reasonably have been different had the doctor's letter been before him.

The opinion of a physician will be given controlling weight if it is supported by medically accepted clinical and laboratory diagnostic techniques and is consistent with the other evidence in the record. 20 C.F.R. § 404.1527(d) (1997). Conversely, if a physician's opinion is not supported by medically-accepted clinical and laboratory diagnostic techniques and is not consistent with the other evidence in the record, it will not be given controlling weight. In evaluating how much weight should be given to the opinion of a physician, the nature and extent of the treatment relationship will be taken into account. Id.

Although not binding on the Commissioner, a treating physician's opinion is entitled to great weight and may be disregarded only if persuasive contradictory evidence exists to rebut it. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Coffman v. Bowen, 829 F.2d 524, 527 (4th Cir. 1988); Foster v. Heckler, 780 F.2d 1125, 1130 (4th Cir. 1986). See also Mitchell v. Schweiker, 699 F.2d 185 (4th Cir. 1983). The court in Craig found by negative implication that if the physician's opinion "is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 589. The court in Mitchell also explained that a treating physician's opinion should be accorded great weight because "it reflects an

9

expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." An ALJ, therefore, must explain his reasons for disregarding a positive opinion of a treating physician that a claimant is disabled. DeLoatche v. Heckler, 715 F.2d 148 (4th Cir. 1983).

The ALJ did not mention nor discuss Dr. Fulcher's report dated November 26, 2002, in which he opined that based upon his examination on November 19, 2002, plaintiff had a "4x4 cm central umbilical bulging protuberance, plus a 2 x2 cm left paraumbilical bulging protuberance. She is being referred to her surgeon Dr. C. T. Fitts for a probable definitive hernia repair operation. She is totally disabled for any occupation considering her age, educational and work history, and severe disabling abdominal wall hernias." (See report attached to plaintiff's brief). Dr. Fulcher is plaintiff's treating physician not a one time consultative physician as was Dr. Korn whom defendant relies on in her argument that Dr. Fulcher's letter would not have changed the ALJ's decision. In fact, the ALJ never mentioned Dr. Fulcher at any point in his decision. Further, as plaintiff's counsel has discussed, this report was not listed as an exhibit in the transcript. Additionally, it is noted that plaintiff referred to the report in her letter to the Appeals Council but still no-one addressed this report. As the ALJ has not explained the weight he gave to Dr. Fulcher's medical opinion or mentioned the report and since it was not listed as an exhibit, the Court does not know if Dr. Fulcher's opinion was even considered by the ALJ. If the ALJ does not analyze all the evidence and fully explain the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine the conclusions reached are rational. Arnold v. Secretary of Health, Educ. & Welfare, 567 F.2d 258, 259 (4th Cir. 1977). As a result of the failure to include the evidence submitted by the plaintiff in the exhibit file and, thus, the ALJ's failure to consider evidence that may be relevant and explain his

assessment of that evidence, the court is unable to ascertain whether the Commissioner's decision is supported by substantial evidence.

## VI.  CONCLUSION

In conclusion, it may well be that substantial evidence exists to support the Commissioner's decision in the instant case. The court cannot, however, speculate on a barren record devoid of the appropriate administrative analysis.  In the absence of any reason being identified by the ALJ for rejecting plaintiff's treating physician's opinion and considering the fact that the report was not listed as an exhibit, the court is unable to complete the review mandated by law.

Accordingly, IT IS THEREFORE RECOMMENDED that the Commissioner's decision be REVERSED and that this matter be REMANDED TO THE COMMISSIONER PURSUANT TO SENTENCE FOUR for further proceedings in accordance with this opinion.

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

August 16, 2005.
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**

### Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"
### &
### The Serious Consequences of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of service. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. *See* Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410, 1993 U.S.Dist. LEXIS® 3411 (D.S.C. 1993).

During the ten-day period for filing objections, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections. *See* Keeler v. Pea, 782 F. Supp. 42, 43-44, 1992 U.S.Dist. LEXIS® 8250 (D.S.C. 1992); and Oliverson v. West Valley City, 875 F. Supp. 1465, 1467, 1995 U.S.Dist. LEXIS® 776 (D.Utah 1995). Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. *See* United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509, 1991 U.S.App. LEXIS® 8487 (6th Cir. 1991). *See also* Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

*See also* Branch v. Martin, 886 F.2d 1043, 1046, 1989 U.S.App. LEXIS® 15,084 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger de novo review"). This notice, hereby, apprises the plaintiff of the consequences of a failure to file specific, written objections. *See* Wright v. Collins, supra; and Small v. Secretary of HHS, 892 F.2d 15, 16, 1989 U.S.App. LEXIS® 19,302 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

Larry W. Propes, Clerk
United States District Court
Post Office Box 2317
Florence, South Carolina  29503
